OPINION
{¶ 1} Appellant, Diana Hobson, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her two children to the Butler County Children Services Board (BCCSB).
 {¶ 2} Appellant is the biological mother of nine-year-old Marlene Smallwood and 12-year-old Amanda Marlow. Both children have special needs. Marlene has behavioral issues, including attention deficit hyperactivity disorder, that require medication. Amanda has Down's syndrome and is also on medication. BCCSB has been involved with appellant and her children since 1992. Both children have been removed from appellant's home several times.
 {¶ 3} After the most recent removal, the children were returned to appellant. BCCSB began to receive referrals regarding the children only two months later. The referrals alleged that appellant had returned to her previous pattern of substance abuse, had used state checks to buy drugs, had been selling food stamps and left the children without proper supervision.
 {¶ 4} Police and BCCSB staff members visited appellant's house where they found between 20 and 30 syringes, spoons and a candle in the basement. BCCSB recommended another drug assessment and treatment. Appellant failed to follow through with the requirements of this case plan. Appellant initially denied any substance abuse, but after a dependency complaint was filed and a drug screen requested, she admitted to relapsing.
 {¶ 5} BCCSB also received a referral regarding an accident involving appellant, in which police reported that she left Amanda injured at the scene, and then left the hospital without giving medical personnel permission to treat Amanda. The children were removed from appellant's home on July 23, 2001 as a result of this incident. They were returned to appellant in August 2001. On August 1, 2001, Amanda was found to be a neglected child and both children were found dependent.
 {¶ 6} In September 2001, appellant was arrested on charges that she sold Marlene's Ritalin. BCCSB continued to receive referrals regarding the children. Problems were reported involving appellant's failure to properly administer the children's medication, excessive absences from school and leaving the children with improper persons. As a result of missed appointments to the pediatrician, they were discharged from the office. Due to appellant's continuing unstable lifestyle, the children were placed in foster care on January 17, 2002. At the time they were placed in foster care, the children had head lice that required three treatments to remove.
 {¶ 7} At the time of their removal from appellant's home, both children exhibited sexualized behavior, which was apparently as a result of abuse by appellant's former boyfriend. Both children also exhibited very aggressive behavior, including temper tantrums and verbal aggressions. The children began seeing a child therapist and were assigned a case manager from St. Joseph's Treatment Center. According to both the case manager and therapist, the girls have made remarkable progress since their removal from appellant's home. The guardian ad litem assigned to the case described the children's transformation as "amazing." The girls' therapist stated that it is very important for the girls to remain in a stable environment and to continue their therapy.
 {¶ 8} Appellant admits to drug relapses and that she has not completed all the requirements of the juvenile court regarding her children and that she has failed to follow through with drug court programs. She admitted to successfully completing drug treatment programs in the past and to relapsing every time.
 {¶ 9} A complaint was filed seeking permanent custody of the children on July 28, 2002. After a hearing, the trial court granted permanent custody of both girls to BCCSB.
 {¶ 10} Appellant now appeals the trial court's decision to grant permanent custody of the children to BCCSB and raises the following single assignment of error:
 {¶ 11} "THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 12} We begin by recognizing that natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 13} A reviewing court will not reverse a finding by a trial court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In reWilliam S. (1996), 75 Ohio St.3d 95.
 {¶ 14} A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent. Id.
 {¶ 15} Appellant argues on appeal that the evidence did not demonstrate that it was in the children's best interest to grant permanent custody to BCCBS. As mentioned above, the agency must demonstrate that "it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C.2151.414(D):
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} Appellant argues that the factors relied on by the trial court were unsubstantiated and that it was in the children's best interest to remain in foster care under a Planned Permanent Living Arrangement.
 {¶ 22} The trial court addressed each of the above factors thoroughly in its decision. We note that the trial court was within its discretion to consider evidence which appellant terms as "unsubstantiated" because the credibility of witnesses and the relative weight of each piece of evidence are left to the discretion of the trier of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 23} The court noted that appellant has been unable to care for her children due to her drug usage and unstable lifestyle and that the children have been in and out of BCCSB care for a considerable amount of time. The court found that the children did not have significant contact with any other family members. The trial court further found that there were repeated health concerns regarding the children and that throughout her involvement with BCCSB, appellant has continually repeated her pattern of drug abuse.
 {¶ 24} The trial court determined that the children are in need of a legally secure placement and that despite numerous opportunities, appellant has been unable to provide stability for her children. The court found that the girls have bonded with their foster family and that they are adoptable.
 {¶ 25} The trial court further found that it had previously granted a Planned Permanent Living Arrangement as an alternative to permanent custody because appellant was making progress in her treatment. However, the court further found that within three months of unification with her children BCCSB again filed a complaint based on numerous referrals and concerns for the children. The court determined that based on her history appellant has had numerous opportunities to rectify the problems in her life in order to provide stability to her children, but that she has continued to fail. The record thoroughly supports the trial court's findings.
 {¶ 26} Accordingly, we find that the trial court did not err in determining that clear and convincing evidence existed for granting permanent custody of the children to BCCBS. Appellant's assignment of error is overruled.
Judgment affirmed.
POWELL and HENDRICKSON, JJ., concur.
Hendrickson, J., Retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.